1  RONALD J. HOLLAND (SBN 148687)
   rjholland@mwe.com
2  LAUREN ZIEGLER (SBN 293189)
   lziegler@mwe.com
3  PHILIP SHECTER (SBN 300661)
   pshecter@mwe.com
4  **MCDERMOTT WILL & EMERY LLP**
   415 Mission St Suite 5600
5  San Francisco, CA  94105-2616
   Telephone:   +1 628 218 3800
6  Facsimile:   +1 628 877 0107

7  Attorneys for Defendant,
   KINKISHARYO INTERNATIONAL,
8  L.L.C.

9              **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11

12  STEVEN COOPER, individually, and on     CASE NO.
    behalf of other members of the general
13  public similarly situated and on behalf of   [Los Angeles County Superior Court Case
    other aggrieved employees pursuant to the    No. 21STCV43115]
14  California Private Attorneys General Act,
                                                 **DEFENDANT KINKISHARYO**
15               Plaintiff,                      **INTERNATIONAL, L.L.C.'S NOTICE**
                                                 **OF REMOVAL**
16       v.
                                                 [28 U.S.C. §§ 1331, 1332(d), 1441, 1446,
17  KINKISHARYO INTERNATIONAL,                   1453]
    LLC, a Delaware limited liability
18  company; and DOES 1 through 100,
    inclusive,
19
                 Defendant.
20

21

22

23

24

25

26

27

28

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant KINKISHARYO INTERNATIONAL, L.L.C. (hereinafter "Kinkisharyo" or "Defendant"), hereby removes the action *Steven Cooper et al. v. Kinkisharyo International LLC et al.*, originally commenced in the Superior Court of the State of California in and for the County of Los Angeles, Case No. 21STCV43115, to the United States District Court for the Central District of California.

Removal is based on the Class Action Fairness Act. This Court has original subject matter jurisdiction over Plaintiff's lawsuit under 28 U.S.C., sections 1332(d), 1441, 1453 and 1446, because minimal diversity exists and the amount in controversy exceeds $5,000,000.

This Court also has original jurisdiction over this action because of the existence of a federal question. Plaintiff seeks to represent putative class members and allegedly aggrieved employees,[1] other than himself, whose employment with Defendant was subject to a collective bargaining agreement ("CBA"), and the alleged conduct of which Plaintiff complains is subject to the CBA for the majority of the class. As such, Plaintiff's class claims are substantially dependent upon the interpretation of a CBA and are, therefore, preempted under Section 301 of the Labor Management Relations Act ("LMRA").

In support of this removal, Defendant states the following pursuant to 28 U.S.C. § 1446(a):

---

[1] Whether or not separately stated herein, the term "putative class members" encompasses any and all allegedly aggrieved employees.

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

## I.

## BACKGROUND AND SUMMARY OF PLEADINGS

1.     Plaintiff STEVEN COOPER ("Plaintiff") is a former employee of Kinkisharyo.  Plaintiff worked for Kinkisharyo from around January 2017 to June 2020 as a burn-in technician and, at his time of hire, was paid an hourly rate of approximately $17.00. *See* Declaration of Melissa Rath ("Rath Decl."), filed herewith, ¶ 6.

2.     On November 23, 2021, Plaintiff, individually and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act, filed a Complaint in the Superior Court of California, County of Los Angeles, Case No. 21STCV43115 ("the Complaint").  In the Complaint, Plaintiff asserts eleven causes of action against Defendant arising out of his employment with Defendant: (1) unpaid overtime; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) unpaid minimum wage; (5) final wages not timely paid; (6) wages not timely paid during employment; (7) non-compliant wage statements; (8) failure to keep requisite payroll records; (9) unreimbursed business expense; (10) unfair competition in violation of Business and Professions Code section 17200, *et seq*; and (11) violation of the Private Attorneys General Act of 2004 ("PAGA").  True and correct copies of the Complaint, Summons, and Civil Case Cover Sheet are attached hereto as **Exhibits 1**, **2**, and **3**, respectively.

3.     As detailed below, Plaintiff's Complaint is removable under the Class Action Fairness Act and, separately, implicates federal law because the terms and conditions of a majority of the putative class members' employment with Kinkisharyo were subject to a collective bargaining agreement between Kinkisharyo and the International Brothers of Electrical Workers, Local 11, dated March 22, 2016 through the P3010 Project Completion (the "CBA"), which has not occurred to date (Rath Decl., ¶ 3, Ex. A).  *See Loaiza v. Kinkisharyo Int'l, LLC*, No.

DEFENDANT'S NOTICE OF REMOVAL

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

LACV1907662JAKKSX, 2020 WL 5913282, at *14 (C.D. Cal. Oct. 6, 2020) (denying motion to remand where Kinkisharyo removed class action complaint under CAFA and separately under the LMRA).  In *Loaiza*, the Court determined plaintiffs' class claim for overtime was expressly preempted under the LMRA and that all remaining "causes of action advanced by the Complaint share a common nucleus of operative facts related to Plaintiffs' employment," such that they were entitled to supplemental jurisdiction.  *Id.* at *5.  As in *Loaiza*, Plaintiff's Complaint here omits that the terms and conditions of putative class members and allegedly aggrieved employees' employments with Kinkisharyo were subject to the CBA.  Additionally, the Court in *Loaiza* found that Kinkisharyo properly removed plaintiffs' complaint under CAFA, because all requirements were met (*Id.* at *13), as is the case here.

4.     A copy of this Notice of Removal will be served on Plaintiff and filed with the Superior Court of California for the County of Los Angeles. **Exhibits 1** through **8** contain all process, pleadings, and orders served on Defendant in accordance with 28 U.S.C. § 1446(a), and no other proceedings have been held in this action.

## II.

## STATEMENT OF JURISDICTION UNDER CAFA

5.     On February 18, 2005, the Class Action Fairness Act ("CAFA") was enacted.  In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

6.     This Court has jurisdiction over this case under CAFA, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: 1) the proposed class contains at least 100 members; 2) the defendant is not a state, state official or other governmental entity; 3) the total amount in controversy for all class members

- 4 -     DEFENDANT'S NOTICE OF REMOVAL

exceeds $5,000,000 and; 4) there is diversity between at least one class member and one defendant.

7.     CAFA's minimal diversity requirement is satisfied when: 1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens, 2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or 3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

8.     As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

9.     Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014).  Rather, "[a] defendant's notice of removal need include only a plausible allegation" that the jurisdictional facts exists. *Id.* at 554.  Evidence is required "*only* when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* (emphasis added).

10.    The United State Supreme Court in *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Id.* (emphasis added) (citations omitted).  Following *Dart Cherokee*, the Ninth Circuit has directed district courts to "interpret CAFA's provisions under section 1332 *broadly in favor of removal . . . .*" *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (emphasis added).  *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively."); *see also Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 929 (9th Cir. 2015) (finding, in light of *Dart Cherokee*, the district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction'"); *Moppin v. Los Robles Reg'l*

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 WL 5618872 at *2  (C.D. Cal. Sept. 24, 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").

## A.

## <u>Minimum Diversity Of Citizenship Exists Here</u>

11.    CAFA requires minimum diversity of citizenship, pursuant to 28 U.S.C. section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –

> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

12.    Defendant is informed and believes, and on that basis alleges, that Plaintiff is, and was at the time the Complaint in the state court action commenced, a citizen of the State of California within the meaning of 28 U.S.C. § 1332(d).  *See* Exhibit 1 (Complaint) ¶ 5 (stating that Plaintiff is an individual residing in California).  An individual is a citizen of his state of domicile.  *Munoz v. Small Bus. Admin.*, 644 F.2d 1361, 1365 (9th Cir. 1981).  Although no evidence of domicile is required at the notice of removal stage, *cf. Dart Cherokee*, 135 S. Ct. at 554, "[p]roof of residence in a state is usually thought prima facie evidence of domicile." *Bradley Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1951); *see Barbosa v. Transp. Drivers, Inc.*, No. ED CV 15-1834-DMG (DTBx), 2015 WL 9272828 at *2 (C.D. Cal. Dec. 18, 2015) ("[A] person's residence is prima facie evidence of his or her place of domicile for purposes of diversity jurisdiction . . . ." (citation omitted)).  Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

change." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013). Accordingly, for purposes of determining diversity, Plaintiff was a citizen of California at the time he filed the Complaint.

13.    For diversity purposes, a limited liability company "is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

14.    Here, Kinkisharyo, a limited liability company, has a single member: Kinki Sharyo Co., Ltd. ("KSJ").  *See* Rath Decl. ¶ 8 & Ex. C.  Kinkisharyo is therefore a citizen of every state and foreign state of which KSJ is a citizen.

15.    In *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93.

16.    Under the foregoing standard, KSJ is a citizen of Japan because that is where it is incorporated and maintains its corporate headquarters.  Japan is where the vast majority of Kinkisharyo's corporate and executive officers are employed.  The vast majority of Kinkisharyo's administrative functions are conducted in Japan. Japan is also where the actual center of direction, control and coordination for Kinkisharyo takes place.  These facts were true at the time this action was initiated and remain true at the time of this removal.

17.    The presence of "Doe" defendants has no bearing on diversity with respect to removal.  *See* 28 U.S.C. § 1441(b); *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

MᶜDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP
Aᴛᴛᴏʀɴᴇʏs Aᴛ Lᴀᴡ
Sᴀɴ Fʀᴀɴᴄɪsᴄᴏ

18.     Because Plaintiff is a citizen of the State of California and Kinkisharyo is a citizen of Japan, minimum diversity requirement under CAFA is satisfied.

**B.**

**The Proposed Class Consists Of At Least 100 Members**

19.     This action has been styled as a California class action under California Code of Civil Procedure section 382.  Exhibit 1 (Complaint) ¶ 12.  California Code of Civil Procedure section 382 is a state statute authorizing an action to be brought by one or more representative persons as a class action.

20.     Plaintiff's Complaint proposes a single class: "All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." Exhibit 1 (Complaint) ¶ 12.

21.     On the basis of its own investigation, Kinkisharyo has determined, and hereby alleges, that there are more than 100 putative class members during the period beginning on the date four (4) years before the filing of the Complaint through to the time of filing of this Notice of Removal.  Therefore, the proposed class consists of a least 100 members.  Rath Decl., ¶ 7.

**C.**

**The Amount in Controversy Exceeds The $5,000,000 Required Under CAFA**

22.     Without making any admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of himself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

23.     A defendant can establish the amount in controversy by setting forth a plausible allegation in the notice of removal that the amount placed in controversy by the plaintiff exceeds the jurisdictional minimum. *Dart Cherokee*, 135 S. Ct. at 554.

24.     CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the aggregate amount in controversy for all class members exceeds $5,000,000.  28 U.S.C. § 1332(d).  By demonstrating that the actual amount in controversy exceeds the threshold, Kinkisharyo does not concede the validity of Plaintiff's claims or the likelihood that Plaintiff's will recover anything.  *See Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe.").  Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of his claims.

25.     Plaintiff's alleged damages for a portion of their wage and hour claims are calculated as follows:

26.     **Meal Period Premiums:**  Plaintiff alleges that he and the putative class members "were required to work for periods longer than five hours without an uninterrupted meal period of not less than thirty minutes and/or rest period, and that "Defendants failed to pay Plaintiff and the other class members the full meal period premium due pursuant to California Labor Code section 226.7."  Exhibit 1 (Complaint) ¶ 71.  Plaintiff therefore claims that he and the putative class are "entitled to recover from Defendants one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided" under Cal. Labor Code § 226.7.  *Id.* ¶ 73.

27.     Based on Kinkisharyo's investigation and records, and notwithstanding that Plaintiff's class definition is vaguely defined, Kinkisharyo employed at least 700 non-exempt employees in California within the four years of the filing of the Complaint.

28.     Based on Kinkisharyo's investigation and records, in the four years preceding the filing of Plaintiff's Complaint, non-exempt employees in California employed by Defendant worked approximately 260 days per year (52 weeks x 5 days

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

per week) and nearly always worked at least 8 hours per workday.  To account for vacation, for purposes of the computations below, Defendant conservatively assumes that these employees worked an average of 250 days per year and 8 hours per workday.

29.     The minimum wage in California was $10.50 on November 23, 2017, four years prior to the filing of Plaintiff's Complaint.

30.     For purposes of ensuring the most conservative calculation of damages for meal period premiums, Kinkisharyo assumes that each of the approximately 700 employees in the putative class were paid at a regular rate of pay equal to California's minimum wage at the start of the limitations period (*i.e.*, $10.50) (*compare*, Plaintiff earned $17.00 per hour at his time of hire in 2017). Rath Decl., ¶ 6.  Kinkisharyo further assumes that those employees worked on average 250 days per year and only for one year.  Plaintiff's meal period claim places, at minimum, approximately **$1,837,500** in controversy:

700 [hourly, non-exempt employees in putative class]

x $10.50 [California's minimum wage in 2017]

x 250 [average days worked]

= $1,837,500.

31.     During the putative class period, these employees were paid on a bi-weekly basis and issued wage statements once every two weeks.

32.     Plaintiff's alleged damages for a portion of their wage and hour claims are calculated as follows:

33.     **Rest Period Premiums:**  Plaintiff alleges that he and the putative class members were required to "work four or more hours without authorizing or permitting a ten minute rest period per each four hours period worked," and that Kinkisharyo failed to pay them "the full rest period premium due pursuant to California Labor Code section 226.7."  Exhibit 1 (Complaint) ¶¶ 78, 80.  Plaintiff therefore claims that he and the putative class "are entitled to recover from

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

Defendants one additional hour of pay at the employees' regular hourly rate of compensation for each day that the rest period was not provided." *Id.* ¶ 82.

34.    For purposes of ensuring the most conservative calculation of damages for rest period premiums, Kinkisharyo assumes that each of the approximately 700 employees in the putative class were paid at a regular rate of pay equal to California's minimum wage at the start of the limitations period (*i.e.*, $10.50). Kinkisharyo further assumes that those employees worked on average 250 days per year and only for one year.  Plaintiff's rest period claim places, at minimum, approximately **$1,837,500** in controversy:

700 [hourly, non-exempt employees in putative class]

x $10.50 [California's minimum wage in 2017]

x 250 [average days worked]

= $1,837,500.

35.    **Waiting Time Penalties:**    Plaintiff alleges that Kinkisharyo intentionally and willfully failed to pay Plaintiff and the putative class members who are no longer employed by Kinkisharyo "their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendant's employ."  Exhibit 1 (Complaint) ¶ 91.  Plaintiff therefore claims that he and the putative class "are entitled to recover form Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." *Id.* ¶ 94.

36.    Based on Kinkisharyo's investigation and records, at least 500 putative class members' employment with Kinkisharyo ended within four years of the filing of Plaintiff's Complaint. Rath Decl., ¶ 7.

37.    For purposes of ensuring the most conservative calculation of damages for rest period premiums, Defendant assumes that each of the approximately 500 former employees in were paid at a regular rate of pay equal to California's minimum wage at the start of the limitations period (*i.e.*, $10.50), and worked only 8

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

hours a day.  Plaintiff's waiting time penalty claim places, at minimum, approximately **$1,260,000** in controversy:

> 500 [hourly, non-exempt employees in putative class]
>
> x $10.50 [California's minimum wage in 2017]
>
> x 8 [hours per day]
>
> x 30 [days]
>
> = $1,260,000

38.     **Attorneys' Fees:**  Plaintiff seeks to recover attorneys' fees.  Exhibit 1 (Complaint) at Prayer for Relief ¶ 8, *et al*.  Plaintiff's claim for attorneys' fees must be included in the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").  Typically, courts use a 25 percent benchmark when calculating the attorney's fees in controversy for purposes of CAFA.  *See, e.g.*, *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465 at *6–7  (N.D. Cal. Mar. 1, 2012); *Marshall v. G2 Secure Staff, LLC*, No. 2:14-cv-04322-ODW(MANx), 2014 WL 3506608 at *3 (C.D. Cal. July 14, 2014); *Rodriguez v. Cleansource, Inc.*, No. 14-CV-0789-L(DHB), 2014 WL 3818304 at *4 (S.D. Cal. Aug. 4, 2014).

39.     For purposes of ensuring the most conservative calculation of attorneys' fees, Kinkisharyo uses the standard 25 percent benchmark and assumes that Plaintiff will only recover attorneys' fees based on the meal and rest period claims and waiting time penalties calculated in Paragraphs 30, 34 and 37 above.  Plaintiff's claim for attorneys' fees place, at minimum, **$1,233,750** in controversy:

> $4,935,000 [meal and rest period damages and waiting time penalties]
>
> x 0.25 [standard benchmark used for removal]
>
> = **$1,233,750**.

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

40.   **Total:**  The total amount in controversy based solely on Plaintiff's claims for meal and rest period premiums, waiting time penalties and attorneys' fees is **$6,168,750.**

41.   These conservative calculations do not account for Plaintiff's claims for unpaid wages for overtime, unreimbursed business expenses, or penalties for inaccurate wage statements and failure to keep requisite payroll records.  These claims will increase the amount in controversy even further past the jurisdictional threshold.  Additionally, these conservative calculations do not account for the actual wages paid to putative class members, all of which were higher than the state minimum and will further increase the amount in controversy past the jurisdictional threshold.

42.   Finally, Kinkisharyo is justified in using a 100 percent violation rate in computing the amount in controversy based on the nature of the pleaded claims.  *See Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); *see also Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350-AB (PLAx), 2015 WL 12765359 at *6 (C.D. Cal. Apr. 28, 2015) ("Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of meal and rest periods.").  Here, because Plaintiff complains that Kinkisharyo had a pattern and practice of failing to provide/authorize meal and rest periods, it is reasonable to assume a 100 percent violation rate for the meal and rest period claims, as well as the waiting time penalties claim, which is derivative of the meal and rest period claims.

43.   A 100 percent violation rate in computing the amount in controversy is particularly appropriate considering that the amount in controversy only takes into account three of Plaintiff's eleven causes of actions.  Thus, as Kinkisharyo's

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

DEFENDANT'S NOTICE OF REMOVAL

1   calculations already assume a lower than 100 percent violation rate, further

2   discounting of the amount in controversy is not justified.

3        44.    Based on the foregoing, Kinkisharyo alleges that the amount placed in

4   controversy by Plaintiff is now at the time of this removal, and was at the institution

5   of this civil action, greater than the jurisdictional amount of $5,000,000 required by

6   CAFA.

7                                            **D.**

8                          **No CAFA Exceptions Apply**

9        45.    CAFA contains a number of exceptions to its grant of original

10  jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(5).  None of these exceptions are

11  applicable here.

12       46.    The first is a discretionary exception based on the number of putative

13  class members found in the state where the action was filed.  *See* 28 U.S.C.

14  § 1332(d)(3).  The exception only applies where the "primary defendants are citizens

15  of the State in which the action was originally filed."  Here, the action was originally

16  filed in California and, as described above, Kinkisharyo is not a citizen of California.

17  Thus, this exception does not apply.

18       47.    Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to

19  CAFA's grant of jurisdiction, based on the number of putative class members in the

20  state in which the action was filed.  However, this exception, too, only applies where

21  all primary defendants, or at least one defendant, is a "citizen of the State in which

22  the action was originally filed."  *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II) and

23  1332(d)(4)(B).  Given that this action was originally filed in California, and

24  Kinkisharyo is not a California citizen, these exceptions also do not apply.

25       48.    Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions for

26  defendants who are government entities, or putative classes which number less than

27  100 in the aggregate.  *See* 28 U.S.C. §§ 1332(d)(5)(A)-(B).  Given that Kinkisharyo

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S NOTICE OF REMOVAL

is not a governmental entity, and the proposed class exceeds 100 members, these exceptions also do not apply.

## IV.

## STATEMENT OF FEDERAL QUESTION JURISDICTION

49.   This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(b), because it is a civil action that presents a federal question.

50.   Plaintiff's class and representative claims are either based upon or preempted by federal law, specifically Section 301 of the LMRA ("Section 301"). 29 U.S.C. § 185.  Under Section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in a district court for the United States having jurisdiction of the parties without regard to the amount in controversy or without regard to the citizenship of the parties." *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000).

51.   Section 301 of the LMRA provides a basis for federal jurisdiction, and authorizes federal courts to develop a federal common law of CBA interpretation. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988).  To ensure uniform interpretations of collective bargaining agreements, federal common law preempts the use of state law in collective bargaining agreement interpretation and enforcement.  *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. V. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962); *Lingle*, 486 U.S. at 411.

52.   Further, all state law claims raised by a union-represented employee that require interpretation of a collective bargaining agreement must be brought pursuant to Section 301 of the LMRA. *Allis-Chalmers Corp. v. Lueck*, 571 U.S. 202, 211 (1985); *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988) (concluding "[t]he preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement . .

DEFENDANT'S NOTICE OF REMOVAL

. [and] any state claim whose outcome depends on analysis of the terms of the agreement."); *see also Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction").

53.     Section 301 has specifically been held to preempt California state law claims that are substantially dependent upon interpretation of a CBA. *Firestone*, 219 F.3d at 1066-67 (claim preempted by Section 301 where the CBA had to be interpreted to resolve the plaintiff's wage claims). This remains true even where interpretation was required to evaluate the employer's defense to a plaintiff's state law cause of action. *See Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 769 (2003) (claim for unpaid wages preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled . . . to wages at the level set by the CBA"). Thus, any suit "alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) ("A state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law.").

54.     Adjudicating Plaintiff's class action claims will require interpretation of the CBA. Thus, Section 301 preempts these causes of action. *See, e.g.*, *Lingle*, 486 U.S. at 405-06 ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted").

55.     Additionally, Plaintiff's PAGA claim is premised upon, and therefore derivative of, the various underlying violations of the California Labor Code identified in Plaintiff's Complaint. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1150 n.3 (9th Cir. 2019) (PAGA claims depend on the underlying violations of the California Labor Code alleged in the complaint). As detailed below, many (if not all) of the underlying labor code violations alleged in Plaintiff's Complaint are preempted by the CBA. Thus, Section 301 also preempts Plaintiff's cause of action

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

under PAGA.  *See, e.g., Lingle*, 486 U.S. at 405-06 ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted"); *see also Franco v. E-3 Sys.*, No. 19-CV-01453-HSG, 2019 WL 6358947, at *3 (N.D. Cal. Nov. 8, 2019) (extending federal question jurisdiction to plaintiff's PAGA claim); *see also Martinez v. Omni Hotels Mgmt. Corp.*, No. 20-CV-1924-MMA (BLM), 2021 WL 196509, at *4 (S.D. Cal. Jan. 20, 2021) ("The Court finds Plaintiffs' distinction between bringing PAGA claim for civil penalties versus bringing a Labor Code claim for wages is irrelevant for the purposes of preemption."); *see also  Sykes v. F.D. Thomas, Inc*., No. 20-CV-03616-VC, 2021 WL 343960, at *1 (N.D. Cal. Feb. 2, 2021)( "Thus, the fact that a PAGA plaintiff effectively stands in the shoes of state officials does not change the preemption analysis, and each of the alleged Labor Code violations must be analyzed individually under the Ninth Circuit's two-step test for complete preemption as set out in *Burnside*.")[2]

## A.

## <u>Putative Class Member's Employments Were Governed by a CBA.</u>

56.     Plaintiff seeks to represent "all current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." Exhibit 1 (Complaint) ¶ 12.   While Plaintiff's employment was not covered by a CBA, the majority of the putative class Plaintiff seeks to represent were or are members of a bargaining unit represented by the International Brothers of Electrical Workers, Local 11 (the "Union"). Rath Decl. ¶ 7. Specifically, around 70 percent of the putative class members were Union members. *Id.* Accordingly, the terms and conditions of putative

---

[2]     The U.S. Supreme Court granted certiorari on December 15, 2021 in *Viking River Cruises, Inc. v. Moriana,* 20-1573, to determine whether the Federal Arbitration Act requires enforcement of arbitration agreements that provide an employee cannot raise representative claims, including under PAGA.

class members' employments were subject to a CBA between Kinkisharyo and the Union.

57.   At all relevant times alleged in the Complaint, Kinkisharyo has been, and is, a company engaged in commerce and in an industry affecting commerce within the meaning of Sections 2(2), 2(6), and 2(7) of the NLRA and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(2), (6), (7) and 185(a).

58.   The Union is a labor organization in which certain employees of Kinkisharyo participate and which exists for the purpose of dealing with employees concerning grievances, labor disputes, wages, rates of pay, hours of employment, conditions of work, discipline, and discharge.  At all relevant times, the Union has been, and is, a labor organization within the meaning of Section 2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

59.   Article 2 of the CBA specifically recognizes the Union as the exclusive representative for covered employees for the purposes of collective bargaining to establish rates of pay, hours of work and other conditions of employment. Article 7 of the CBA governs working hours, overtime, meal and rest periods. Article 17 of the CBA governs the applicable wage rates.

**B.**

**Plaintiff's Claims are Preempted by the LMRA Because They Require Substantial Interpretation of a CBA.**

**1.**

**Plaintiff's Failure to Reference Section 301 of the LMRA in His Complaint Does Not Preclude Removal.**

60.   The Complaint omits the fact that a majority of putative class members were members of the Union and employed by Kinkisharyo through a CBA. However, a plaintiff may not be permitted to "artfully plead" his complaint to conceal the true nature of the complaint." *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993,997 (9th  Cir. 1987) (holding that plaintiff's state law claim was preempted

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

even though operative complaint made no mention of a collective bargaining agreement).  Thus, the fact that Plaintiff has not made specific reference to Section 301 in his Complaint does not preclude removal.  The Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301.  *See Lippitt v. Raymond James Fin. Servs., Inc.,* 340 F.3d 1033, 1041 (9th Cir. 2003).  Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction."  *Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir. 1983), *overruled in part on other grounds in Moore-Thomas v. Alaska Airlines, Inc.,* 553 F.3d 1241 (9th Cir. 2009).

61.    An artfully pled state law claim is properly "re-characterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 of the LMRA "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

62.    Here, the claims asserted in Plaintiff's class action Complaint are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on an analysis and interpretation of a collective bargaining agreement.  *See Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991).  To analyze Plaintiff's class claims, therefore, the Court will necessarily need to interpret the provisions of the relevant CBA.

**2.**

**Resolution of Plaintiff's Claims Will Require Substantial Interpretation of Various Provisions of the CBA.**

63.    The Court cannot simply look to state law to resolve Plaintiff's artfully pled claims for breach of a CBA.  Thus, Plaintiff's claims cannot be adjudicated

without interpretation of numerous CBA provisions that govern the putative class members' employment.

64.     Plaintiff asserts the following class and representative claims: (1) unpaid overtime; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) unpaid minimum wage; (5) final wages not timely paid; (6) wages not timely paid during employment; (7) non-compliant wage statements; (8) failure to keep requisite payroll records; (9) unreimbursed business expense; (10) unfair competition; and (11) violation of the PAGA.  The applicable CBA contains specific language governing time worked, wages, overtime, pay periods, and meal and rest periods. The CBA also provides for a grievance process and requires binding arbitration to resolve any disputes arising under the CBA, including disputes as to the interpretation of application of any of the express provisions of the CBA.  Resolution of Plaintiff's class and representative claims will require the Court to interpret, at a minimum, all of these provisions.

65.     **Wages, Hours, and Overtime:**  Plaintiff's Complaint alleges Kinkisharyo's failure to timely provide proper compensation, including minimum wage and overtime, to putative class members and allegedly aggrieved employees. The CBA sets forth the parties' mutual agreement regarding all issues pertaining to employee wages, including but not limited to pay periods, pay for overtime, and applicable wage rates.  The focus of Plaintiff's wage claims is that Plaintiff, putative class members and allegedly aggrieved employees were not compensated for all time under the control of Kinkisharyo.  Assuming, *arguendo*, that Plaintiff's claims are valid, the CBA expressly provides for compensation of all hours worked, including overtime.  As for the method and timing of payments, Article 7, Section 3 of the CBA states that "[t]he Employer shall have a regular designated payday for all Employees, which may be changed with two weeks' notice to the Union so long as the Employer does not change the pay period to less than two pay periods a month." Rath Decl. ¶ 3, Ex. A.  More importantly, the CBA expressly provides that should

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

there be a dispute "regarding whether an Employee is paid untimely or inaccurately under applicable state or federal law (*i.e.*, minimum wage, overtime, failure to pay wages) the sole and exclusive remedy shall be the binding grievance and arbitration procedures set forth in Article.  In the event that the parties cannot resolve the matter informally under that procedure, such dispute shall be submitted to binding arbitration."  Rath Decl. ¶ 3, Ex. A.  To the extent putative class members and allegedly aggrieved employees have claims regarding untimely payment of employee wages, the CBA will need to be interpreted in order for the Court to determine whether the exemption built into Labor Code section 204(c), which provides, "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees" applies here.  Thus, the putative class members and allegedly aggrieved employees' rights to wages, compensation, and overtime substantially depend on an analysis of the CBA.

Moreover, the overtime provisions set forth in Cal. Lab. Code § 510 do not apply to a majority of the putative class members and allegedly aggrieved employees per the exemption for employees covered by a valid CBA that is expressly set forth in § 514.  The CBA qualifies for the § 514 exemption because it specifically provides for wages (*see* CBA *generally* & Art. 17), hours of work (*see* CBA *generally* & Art. 7), working conditions (Art. 3), premium wage rates for overtime (Art. 7, Section 1), and an hourly pay rate that is greater than 30 percent of the California minimum (Art. 17).  Rath Decl. ¶ 3, Ex. A.

66.  **Meal and Rest Periods:**  Plaintiff's Complaint alleges, in part, that Kinkisharyo's failed to provide meal and rest periods to putative class members and allegedly aggrieved employees.  The CBA provides for meal and rest periods, and expressly lays out the conditions under which employees are entitled to such breaks. These provisions differ from the statutory meal and rest period requirements set forth in Labor Code §§ 512 and 226.7 and the IWC Wage Order. For example, the CBA provides a majority of putative class members and allegedly aggrieved employees

with a 45-minute meal period before their fifth hour of work, which is beyond the 30-minute meal period required by § 512.  Additionally, if a union employee does not take a second meal period, "it is presumed [under the CBA] that he waived that meal period." Rath Decl. ¶ 3, Ex. A, Art. 7, § 2(a). By contrast, Wage Order No. 1 does not allow for meal period waivers to be presumed; instead, waivers must be by mutual consent and in writing. Cal. Code Regs., tit. 8, § 11010(11)(B)–(C). Likewise, the CBA includes a mandatory notification requirement whereby "it is the Employee's duty and responsibility to notify his supervisor that he was not able to take a meal (or rest) period at the time the meal/rest period was missed," Rath Decl., ¶ 3, Ex. A, Art. 7, § 2(d). This requirement does not exist under the statutory meal and rest period requirements. Accordingly, these provisions of the CBA will require interpretation to determine which meal or rest periods, if any, putative class members and allegedly aggrieved employees are entitled to; whether such employees presumably waived any periods within the meaning of the CBA; and whether such employees met their contractual burden of notifying their supervisors if they were unable to take meal or rest periods.

More importantly, the CBA expressly calls for final and binding arbitration for any and all disputes concerning meal and rest periods, providing, "[a]ny complaint arising in connection with the application or interpretation of this Article, including, but not limited to claims regarding alleged meal and/or rest period violations and/or alleged payment of wages or penalties for alleged meal and/or rest period violations pursuant to this Agreement or applicable state or federal law, including but not limited to Labor Code Sections 226.7 and 512, shall be exclusively subject to the grievance and arbitration procedure set forth in this Agreement and shall not be subject to resolution by way of court, a jury trial, or administrative proceeding, regardless of whether the claim alleges violation of this Agreement or of a statutory, regulatory, and/or common law duty or requirement...*The parties also agree that any derivative claims for statutory violations and/or civil penalties based on an*

DEFENDANT'S NOTICE OF REMOVAL

*alleged failure to provide a meal and rest period pursuant to California law, including claims pursuant to Labor Code 2699 [PAGA] shall be subject to the parties grievance and arbitration procedure."* (emphasis added).  Rath Decl., ¶ 4, Ex. B.  The putative class members and allegedly aggrieved employees' rights to meal and rest periods substantially depend on an analysis of the CBA.

67.    **Grievance and Arbitration Procedure:**  As set forth above, the grievance and arbitration procedure laid out in the CBA covers any "*dispute between the Employer and the Union on behalf of any Employee (other than a probationary Employee) regarding the interpretation of any express provision of the Agreement."* Rath Decl. ¶ 3, Ex. A, Art. 10.   The CBA contains express provisions that provide for wages, meal and rest periods, overtime compensation, and the payment of wages as follows:

| CBA Provision | Governing Labor Code Provisions Cited in Plaintiff's Complaint |
| --- | --- |
| wages (*see* CBA *generally* & Art. 17) | §§1194, 1197 and 1197.1 |
| meal periods (Art. 7, Section 2) | §§512 and 226.7 |
| rest periods (Art. 7, Section 2) | §226.7 |
| overtime (Art. 7, Section 1) | §§510 and 1198 |
| payment of wages (Art. 7, Section 3) | §§ 201, 202 and 204 |

Accordingly, the claims of putative class members and allegedly aggrieved employees that are premised on Labor Code §§ 201, 202, 204, 226.7, 510, 512, 1194, 1197, 1197.1 and 1198 are subject to arbitration as the exclusive remedy per the CBA.  The promotion of extra-judicial dispute resolution is another purpose of Section 301 preemption.  State court lawsuits properly removed on preemption grounds may then be deferred to arbitration, if the parties to the CBA have so agreed. *See Livadas v. Bradshaw*, 512 U.S. 107, 142 fn. 18 (1994).  Here, the parties have so

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

agreed, and the claims are therefore subject to arbitration as discussed above.

Accordingly, any alleged violation of the CBA is subject to the grievance procedures

set forth therein.  As all of Plaintiff's claims asserted on behalf of putative class

members and allegedly aggrieved employees are in essence alleged violations of the

CBA, the Court will necessarily have to interpret the grievance and arbitration

provisions to analyze Plaintiff's class and representative claims in this case.  That is,

the Court will be required to determine whether the putative class members and

allegedly aggrieved employees whose employments were governed by the CBA were

first required to exhaust the grievance procedures, whether they did in fact exhaust

those procedures, and whether the parties agreed to arbitrate all or some of the

putative class members' claims – which are all questions reserved for federal courts

under the LMRA.

68.     Accordingly, Plaintiff's class and representative claims are substantially

dependent upon the interpretation of the foregoing CBA terms and provisions.  In

fact, those terms and provisions govern nearly all of the conduct which forms the

basis for Plaintiff's Complaint, and thus are essential to the resolution of Plaintiff's

claims.  As such, each of Plaintiff's class and representative claims arises under

Section 301 of the LMRA, and are therefore preempted by federal law.  Removal to

federal court is warranted.

## V.

## SUPPLEMENTAL JURISDICTION

69.     To the extent there are some claims alleged in the Complaint that do not

raise federal questions (and/or are not preempted by Section 301 of the LMRA), such

claims are removable under 28 U.S.C. § 1441(c) and, pursuant to this Court's

supplemental jurisdiction, under 28 U.S.C. § 1367, because they relate to and

emanate from the same employment relationship between Plaintiff and/or putative

class members and Kinkisharyo that is the subject of the federal question claims.

This Court has jurisdiction over such state law claims pursuant to the doctrine of

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

supplemental jurisdiction under 28 U.S.C. §1367(a), because they are so related to the federal claims as to form part of the same case or controversy under Article III of the U.S. Constitution, and they are substantially related to and rise out of the same nucleus of operative facts as Plaintiff's class and representative claims arising under the LMRA such as they should be tried in one action. *See Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 714 (9th Cir. 1990); *see also Loaiza v. Kinkisharyo Int'l, LLC,* No. LACV1907662JAKKSX, 2020 WL 5913282, at *5 (C.D. Cal. Oct. 6, 2020) (finding plaintiffs' class claim for overtime was expressly preempted under the LMRA and that all remaining "causes of action advanced by the Complaint share a common nucleus of operative facts related to Plaintiffs' employment," such that they were entitled to supplemental jurisdiction). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims in the Complaint as well. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26 (1966).

**V.**

**TIMELINESS OF REMOVAL**

70.  <u>Removal Was Timely</u>.  Kinkisharyo received the Complaint through service of process on December 8, 2021.  This Notice is timely filed in accordance with 28 U.S.C. § 1446(b), because less than thirty (30) days have elapsed since Kinkisharyo received the pleadings setting forth the claims for relief upon which this removal is based.

71.  <u>State Court Within this Court's Jurisdiction.</u>  Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 84(c) and 1391 because the county in which the State Court Action was pending (Los Angeles) is found within this District.

72.  <u>Consent to Removal.</u>  Defendant is not aware of any other defendant having been served with a copy of Plaintiff's Complaint, and the requirements of 28 U.S.C. § 1446(b)(2)(A) are met.

73.  <u>State Court Pleading Attached</u>.  In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings and orders" from the state court action served on Kinkisharyo or filed by Kinkisharyo are attached hereto as the following exhibits, including Plaintiff's Complaint **(Exhibit 1)**; Summons of Plaintiff's Complaint (**Exhibit 2**); Civil Case Cover Sheet (**Exhibit 3**); Notice of Case Assignment (**Exhibit 4**); Minute Order (**Exhibit 5**); Initial Status Conference Order (**Exhibit 6**); Certification of Mailing **(Exhibit 7)**; and Kinkisharyo's Answer to Plaintiff's Complaint (**Exhibit 8**).

74.  <u>Filing and Service of Notice of Removal.</u> This Notice will be promptly served on Plaintiffs and filed with the Clerk of the Superior Court of the State of California in and for the County of Los Angeles.

**WHEREFORE**, Kinkisharyo requests that the above action pending before the Superior Court of the State of California for the County of Los Angeles be removed to the United States District Court for the Central District of California.

Dated: January 6, 2022          **MCDERMOTT WILL & EMERY LLP**

By:   */s/ Ronald J. Holland*
      RONALD HOLLAND
      LAUREN ZIEGLER
      PHILIP SHECTER
      Attorneys for Plaintiff
      KINKISHARYO INTERNATIONAL,
      LLC